UNITED STATES of America,
Plaintiff–Appellee,

v.

Roseli BANUELOS–RODRIGUEZ, aka:
Rogelio Banuelos–Rodriguez,
Defendant–Appellant.

No. 96–50297.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 4, 1997.

Decided April 6, 1999.

Carlton F. Gunn, Deputy Federal Public Defender, Los Angeles, California, for defendant-appellant.

Jean Rosenbluth, Assistant United States Attorney (argued), Terri A. Law, Assistant United States Attorney (on the briefs), Los Angeles, California, for plaintiff-appellee.

Before: FLETCHER and PREGERSON, Circuit Judges, and

WEXLER,* District Judge.

Opinion by Judge PREGERSON;
Dissent by Judge WEXLER.

PREGERSON, Circuit Judge:

Rogelio Banuelos–Rodriguez pled guilty to illegally reentering the United States after being deported, in violation of 8 U.S.C. § 1326. He was sentenced to a prison term of seventy months. At sentencing, he argued for a downward departure from the applicable range under the Sentencing Guidelines. He contended that he was entitled to downward departure because of a sentencing disparity that existed between the Central District of California and the Southern District of California for a violation of § 1326. He asserted that if he had been prosecuted in the Southern District of California, the Government would have entered into a plea agreement with him that would have resulted in a sentence of only twenty-four months.

The district court held that sentencing disparity between federal districts for a violation of § 1326 is not a proper basis for downward departure. We disagree.

We hold that sentencing disparity for a § 1326 violation that arises from different plea-bargaining policies of United States Attorneys in California's Central and Southern Districts can be a valid basis for downward departure. Thus, we reverse and remand.

## FACTS AND PRIOR PROCEEDINGS

In August 1995, a federal grand jury returned a one-count indictment charging Banuelos–Rodriguez with being a deported alien found in the Central District of California in violation of 8 U.S.C. §§ 1326(a), (b)(1), and (b)(2).[1]

Banuelos–Rodriguez pled guilty to the indictment. In accordance with his plea agreement, Banuelos–Rodriguez admitted he was guilty of violating § 1326(a) and further admitted facts that made him subject to the sentencing enhancement provisions of § 1326(b)(2). At sentencing, he argued for a downward departure from the sentencing guideline range based on an alleged disparity in the severity of sentences given to aliens convicted of § 1326 violations in different federal districts of California. In support of his motion for downward departure, Banuelos–Rodriguez submitted an article from the *Los Angeles Daily Journal,* a legal newspaper. The article stated that a previously deported alien indicted in the Southern District of California would be eligible for that District's "fast track" plea-bargaining program. *See* Thom Mrozek, *Prosecutions on the Rise: U.S. Attorneys Take Varying Approaches to Illegal Re–Entry,* L.A. Daily J., Sept. 21, 1995, at 1. According to the article, a defendant's participation in the "fast track" program significantly reduces his or her sentencing range in exchange for a timely guilty plea. *Id.* at 9. The article states that "the vast majority of defendants-except those convicted of the most violent and depraved acts-are offered a deal under Section 1326(a), which carries a statutory maximum sentence of two years in prison." *Id.* The article also states that "[t]hose few defendants who face longer prison terms under [§ ] 1326(b) are offered plea bargains that see their sentences top out at five years." *Id.* at 9. According to the article, California's Eastern and Northern Federal Districts

---

* Honorable Leonard D. Wexler, Senior United States District Judge for the Eastern District of New York, sitting by designation.

1. The Supreme Court held in *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 1226, 140 L.Ed.2d 350 (1998), that 8 U.S.C. § 1326(a) and § 1326(b) do not describe separate offenses. Rather, § 1326(a) describes the offense (illegal reentry), and § 1326(b) provides sentencing enhancements for that offense. *See id.* (clarifying relationship between § 1326(a) and § 1326(b)(2)); *see also United States v. Alviso,* 152 F.3d 1195 (9th Cir.1998) (§ 1326(a) and § 1326(b)(1)).

have adopted policies similar to the Southern District's "fast track" program. *Id.*

The district court denied Banuelos–Rodriguez's motion for a downward departure and stated: "[I]f the court accepts whatever has been bargained and then sentences pursuant to the guidelines, then I don't see how disparity in the plea bargain charging [among] the various districts adds up to a downward departure factor." The court concluded "it's not a proper factor for departure."

The district court sentenced Banuelos–Rodriguez to seventy months of imprisonment and three years of supervised release. Banuelos–Rodriguez timely appeals this sentence. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## ANALYSIS

### I. Standard of Review

 "[A] unitary abuse of discretion standard governs our review of departure decisions...." *United States v. Sablan,* 114 F.3d 913, 916 (9th Cir.1997) (en banc). While we defer to a district court's discretion in departure decisions, a "'district court by definition abuses its discretion when it makes an error of law.'" *Id.* (quoting *Koon v. United States,* 518 U.S. 81, 99, 116 S.Ct. 2035, 2047, 135 L.Ed.2d 392 (1996)).

### II. Factors Considered in Departure Decisions

 In *Koon,* the Supreme Court described the factors that a district court should consider when confronted with a motion to depart downward from the applicable Sentencing Guideline range:

1) What features of this case, potentially, take it outside the Guidelines' "heartland" and make of it a special, or unusual, case?

2) Has the Commission forbidden departures based on those features?

3) If not, has the Commission encouraged departures based on those features?

4) If not, has the Commission discouraged departures based on those features?

518 U.S. at 95, 116 S.Ct. at 2045 (quoting *United States v. Rivera,* 994 F.2d 942, 949 ( [1st Cir.] 1993)). The district court in the present case did not consider these factors when confronted with Banuelos–Rodriguez's motion for downward departure. Our review of these factors convinces us that sentencing disparities among federal districts based on U.S. Attorneys' plea-bargaining practices can be a ground for departure in the appropriate case.

We first note that a disparity in sentencing among federal districts arising from plea-bargaining policies of U.S. Attorneys is not one of the factors forbidden by the Commission. *See* United States Sentencing Commission, *Guidelines Manual,* § 5H1.10, p.s. (Nov.1995) (forbidding "Race, Sex, National Origin, Creed, Religion, and Socio–Economic Status" as grounds for sentencing departure). Nor is such a disparity specifically "discouraged" by the Sentencing Guidelines. *See Koon,* 518 U.S. at 95, 116 S.Ct. at 2045 (discussing specific offender characteristics that are discouraged as bases for departure under the Sentencing Guidelines). On the other hand, the sentencing disparity among districts due to plea-bargaining policies cannot be described as an "encouraged" basis for departure in the Sentencing Guidelines. *See, e.g.,* U.S.S.G. § 5K2.13, p.s. (encouraging departures based on a defendant's "significantly reduced mental capacity").

Disparity in sentencing among federal districts arising from the plea-bargaining policies of U.S. Attorneys is simply not a factor mentioned in the Sentencing Guidelines. Thus, "[we] must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guide-

line's heartland." *Koon,* 518 U.S. at 96, 116 S.Ct. at 2045 (internal quotations and citation omitted).

### A. Sentencing Guideline § 2L1.2

The structure and theory of U.S.S.G. § 2L1.2 (the relevant individual guideline) suggest that a downward departure may be appropriate in this case. To understand § 2L1.2 and the Southern District's "fast track" program, it is helpful to first examine the underlying criminal statute. Banuelos–Rodriguez was charged with a violation of 8 U.S.C. § 1326, which provides in part:

*Reentry of deported alien; criminal penalties for reentry of certain deported aliens*

(a) Subject to subsection (b) of this section, any alien who-

(1) has been arrested and deported, has been excluded and deported, or has departed the United States while an order of exclusion or deportation is outstanding, and thereafter[ ]

(2) ... is at any time found in, the United States ...

shall be ... imprisoned not more than 2 years....

(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection-

(1) whose deportation was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be ... imprisoned not more than 10 years ...;

(2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be ... imprisoned not more than 20 years....

8 U.S.C. § 1326.

The sentencing exposure for an alien varies dramatically depending on whether subsection (b) of § 1326 is applied. In cases such as this one, that variance depends on whether the defendant is required, as part of his plea to § 1326(a), to admit to facts that subject him to the sentencing enhancement provisions under § 1326(b).

Sentencing Guideline § 2L1.2 provides:

*Unlawfully Entering or Remaining in the United States*

(a) Base Offense Level: 8

(b) Specific Offense Characteristics

If more than one applies, use the greater:

(1) If the defendant previously was deported after a conviction for a felony, other than a felony involving violation of the immigration laws, increase by 4 levels.

(2) If the defendant previously was deported after a conviction for an aggravated felony, increase by 16 levels.

U.S.S.G. § 2L1.2.

Thus, as was the case in *Koon,* "[t]he heartland of [the guideline] will vary depending on the defendant's conduct." *Koon,* 518 U.S. at 101, 116 S.Ct. at 2048. In general, prior felony convictions result in an increase of four levels. U.S.S.G. § 2L1.2(b)(1). Convictions for "aggravated" felonies result in an increase of sixteen levels. *Id.* at § 2L1.2(b)(2) and comment. (n.7) (defining "aggravated felony").

The theory behind this guideline is manifest in its structure: the more extensive a reentering alien's criminal history, the more severe the sentence. The structure and theory of § 2L1.2 do not take into account the fact that sentencing disparity for § 1326 violations might occur among federal districts because of different plea-bargaining practices of U.S. Attorneys. While the Guideline calls for longer sentences for aliens with more severe criminal histories, in practice, given the alleged sentencing disparity, the single most influential factor in an alien's sentencing for a violation of § 1326 is the *location* of his arrest. In short, an alien who crosses the

invisible county line separating the Southern and Central Districts (the districts comprise a contiguous, heavily populated metropolitan area) may more than triple his or her federal sentence for violating § 1326. The "heartland" of Guideline § 2L1.2 certainly does not take account of that variable.

A district court's consideration of such disparity as a basis for downward departure is consistent with the Guideline's central structural premise that an extensive criminal history-not the location of arrest-will result in a more severe sentence. The structure and theory of § 2L1.2 could support a finding that Banuelos–Rodriguez's case is not within the heartland of this guideline, thus warranting a downward departure.

### B. Sentencing Guidelines Taken as a Whole

Our examination of the structure and theory of the Sentencing Guidelines taken as a whole also leads us to conclude that this case may be outside of the Guidelines' "heartland," again warranting downward departure.

A central goal of the Sentencing Guidelines is to eliminate sentencing disparity. The purpose of the Sentencing Commission was to establish guidelines that "avoid[ ] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct." 28 U.S.C. § 991(b)(1)(B). As the Commission explained, "Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." U.S.S.G. Ch. 1, Pt. A, p.s. 3. "The goal of the Sentencing Guidelines is, of course, to reduce unjustified disparities and so reach towards the even-handedness and neutrality that are the distinguishing marks of any principled system of justice." *Koon,* 518 U.S. at 113, 116 S.Ct. at 2053.

Federal sentences that triple in severity solely because of the federal district in which the alien is convicted frustrate congressional intent to secure reasonable uniformity in sentencing. In this case, similar, contiguous federal districts employ radically different plea bargaining policies in otherwise-similar cases. The disparity in sentences, the similarities of the districts involved, and the close proximity of those districts are factors that persuade us that a downward departure may be warranted in this case.

The Government argues that because Banuelos–Rodriguez has made no showing of impermissible discrimination, the charging policy of the U.S. Attorney for the Central District is a valid exercise of prosecutorial discretion. *See United States v. Bauer,* 84 F.3d 1549, 1560 (9th Cir.1996) ("A prosecutor's decision to bring charges is beyond judicial review unless the defendants can make a *prima facie* showing that the decision rested on an impermissible basis.").

In light of the Supreme Court's decision in *Almendarez–Torres v. United States,* 118 S.Ct. at 1226, that § 1326(b)(2) does not describe a separate criminal offense from § 1326(a), but rather provides a sentencing enhancement, the differential treatment of reentering aliens is a result of plea-bargaining, not charging, policies.

Moreover, while we acknowledge the prosecutor's discretion in adopting plea-bargaining policies, we nonetheless are mindful that the Sentencing Guidelines "are intended to ensure that plea negotiation practices ... do not perpetuate unwarranted sentencing disparity." U.S.S.G. Ch. 6, Pt. B, intro. comment. To this end, a court may accept a plea agreement "if the court determines ... that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines." U.S.S.G. § 6B1.2(a). Moreover, "a sentencing court may control any inappropriate manipulation of the indictment through use of its departure power." U.S.S.G. Ch. 1, Pt. A, p.s. 4(a).

Our conclusion that disparity in sentencing of § 1326 cases among federal districts may be a valid ground for downward departure is consistent with our decisions permitting departures in light of disparate sentencing schemes. *See United States v. Ray,* 930 F.2d 1368 (9th Cir. 1990), *as amended* Apr. 23, 1991 (upholding court's authority to depart downward where defendant sentenced under Guidelines received more severe sentence than codefendants sentenced during period when Ninth Circuit rejected Guidelines), *cert. denied,* 498 U.S. 1124, 111 S.Ct. 1084, 112 L.Ed.2d 1189 (1991); *United States v. Boshell,* 952 F.2d 1101 (9th Cir. 1991) (upholding downward departure where defendant's criminal acts straddled the Guidelines' effective date yet defendant charged only with Guideline crimes, while codefendants were given an opportunity to plead to pre-Guidelines crimes with lower sentences).

We are not persuaded by the Government's argument that a downward departure is foreclosed by our decision in *United States v. Mejia,* 953 F.2d 461 (9th Cir. 1991), *as amended,* Mar. 25, 1992, *cert. denied,* 504 U.S. 926, 112 S.Ct. 1983, 118 L.Ed.2d 581 (1992). In *Mejia,* we held that a district court cannot "depart downward for the purpose of avoiding unequal treatment of codefendants." *Id.* at 468. We explained:

> The Sentencing Guidelines attempt to ensure that all defendants receive like sentences for like crimes. A downward departure to correct sentencing disparity brings a defendant's sentence more into line with his or her codefendant's sentence, but places it out of line with sentences imposed on all similar offenders in other cases.... The greater uniformity trumps the lesser disparity.

*Id.* (citation omitted).

Mejia's sentence achieved greater uniformity with other sentences generally, and departing to account for the disparity vis-a-vis his codefendant's sentence would have created a greater disparity. In this case, by contrast, the disparity is between the Central District of California's treatment of § 1326 defendants and the treatment accorded such defendants elsewhere in California. This *greater disparity* trumps whatever lesser uniformity there may be in how similarly situated defendants are treated within the Central District. Indeed, the differing § 1326 plea-bargaining policies of U.S. Attorneys in California result in a systemic sentencing disparity that is " 'highly infrequent' " among federal crimes. *Koon,* 518 U.S. at 96, 116 S.Ct. at 2045 (quoting U.S.S.G. Ch. 1, Pt. A).

The validity of *Mejia* after the Supreme Court's decision in *Koon* may be questionable. In *Koon,* the Court cautioned federal courts against categorically prohibiting factors as bases for departure when the factors are not discussed in the Sentencing Guidelines. 518 U.S. at 106–07, 116 S.Ct. at 2050. To the extent *Mejia* might be read to forbid consideration of sentencing disparity among co-defendants, such a categorical prohibition arguably is inconsistent with *Koon. See United States v. Sanchez–Rodriguez,* 161 F.3d 556, 560–61 (9th Cir.1998) (en banc) ("*Koon* made it clear that we cannot categorically forbid a district court from departing downward on any basis except for those specifically proscribed in the Guidelines.") (footnote and citations omitted).

## CONCLUSION

We are mindful of the Court's admonition in *Koon* that departures based on grounds not mentioned in the Sentencing Guidelines will be "highly infrequent." 518 U.S. at 96, 116 S.Ct. at 2045. Accordingly, we emphasize the narrowness of our decision. Differences in U.S. Attorneys' plea-bargaining policies in California for § 1326 violations have apparently created gross sentencing disparities in neighboring federal districts. The Government has identified no other federal criminal statute that has spawned such enormous disparities. Because varying approaches to

§ 1326 prosecution create this unique systemic disparity, our decision is necessarily limited to the unique circumstances of § 1326 prosecutions in the Central District of California.

We also emphasize that we do not today decide whether Banuelos–Rodriguez is actually entitled to a sentencing departure. It will be the task of the district court to make a "refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing." *Id.* at 98, 116 S.Ct. at 2046–47. We express no opinion whether the evidence Banuelos–Rodriguez has presented is sufficient to warrant such a departure, nor do we speculate about what evidence would be necessary to merit a departure. Rather, we simply reiterate a rule made clear in *Koon:* it is the task of Congress, not the federal courts, to identify factors which are categorically forbidden as grounds for departure from the Sentencing Guidelines.

Gross sentencing disparities among similar contiguous federal districts because of different plea-bargaining policies of U.S. Attorneys in § 1326 prosecutions may be a valid ground for departure. The district court was incorrect when it held that this was not a proper factor to be considered for a departure. We remand so that the district court may exercise its discretion and determine whether the unique circumstances of Banuelos–Rodriguez's case cause it to fall outside of the Sentencing Guidelines' "heartland."

REVERSED AND REMANDED.

WEXLER, District Judge, dissenting:

While I agree with the majority's statement of the relevant factual and procedural background, I believe that the alleged sentencing disparity cannot be used as a basis for downward departure because it is not "sufficient to take this case out of the Guideline's heartland," as required under *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). Accordingly, I respectfully dissent and vote to affirm Banuelos–Rodriguez's sentence.

Although sentencing disparity among federal districts resulting from different plea-bargaining practices of U.S. Attorneys is not mentioned as a forbidden, encouraged, or discouraged factor for departure, I believe that the sentencing disparity, as it allegedly occurs in the circumstances here, is not sufficient to take Banuelos–Rodriguez's case out of the heartland of § 2L1.2. In my view, when analyzed under *Koon,* the alleged sentencing disparity between the Central District of California and California's other districts, resulting from the "fast track" program adopted in the Southern District and similar programs adopted in the other districts, does not make Banuelos–Rodriguez's case "special" or "unusual." While the heartland of § 2L1.2 may vary depending on an offender's conduct, Banuelos–Rodriguez's offense conduct falls squarely within the heartland of § 2L1.2. Banuelos–Rodriguez received the sentence prescribed by § 2L1.2 for a defendant with his criminal history committing the offense conduct in which he engaged and for which he was convicted.

Significantly, the *Koon* Court emphasized that departures based on grounds not mentioned in the Guidelines will be "highly infrequent." *Koon,* 518 U.S. at 96, 116 S.Ct. at 2045. By downwardly departing for § 1326 defendants who could have benefitted from the "fast track" program, the district court would, in effect, be adopting the "fast track" program in the Central District, making downward departures in the Central District for such defendants not infrequent. I believe that the district court should not substitute its discretion for the prosecutorial discretion exercised by the Central District's U.S. Attorney, who allegedly has not adopted the "fast track" program in that district.

The overriding goal of the Sentencing Guidelines is the elimination of national sentencing disparity. *See* 28 U.S.C. § 991(b)(1)(B); U.S.S.G. ch. 1, pt. A, p.s.

3; *see also United States v. Sitton*, 968 F.2d 947, 962 (9th Cir.1992), *cert. denied*, 507 U.S. 929, 113 S.Ct. 1306, 122 L.Ed.2d 695 (1993). In formulating the Guidelines, the Sentencing Commission took into account that sentencing disparity among federal districts might occur because of different plea-bargaining practices of U.S. Attorneys. Indeed, as the Sentencing Commission indicated, the Sentencing Guidelines "are intended to ensure that plea negotiation practices . . . do not perpetuate unwarranted sentencing disparity." U.S.S.G. ch. 6, pt. B, intro. comment. To avoid unwarranted sentencing disparity due to the exercise of prosecutorial discretion, the Sentencing Commission incorporated in the Guidelines various checks on plea-bargaining practices through policy statements to be used by federal courts in deciding whether to accept plea agreements. *Id.* To this end, as the majority notes, a court may accept a plea agreement "if the court determines . . . that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines." U.S.S.G. § 6B1.2(a).

Although downward departure presumably would lessen any sentencing disparity between a § 1326 defendant in the Central District and § 1326 defendants in California's other districts, allowing departure ignores any sentencing disparity between § 1326 defendants in California's districts and § 1326 defendants in other districts in the country. If the goal of eliminating national sentencing disparity is to be achieved, the district court would be required to consider the plea-bargaining practices for § 1326 defendants in every district in the country, not just California's districts. In other words, the elimination of sentencing disparity in California's districts ignores the Guidelines' goal of eliminating national sentencing disparity. Contrary to the majority's conclusion, downward departure under the circumstances may very well sacrifice the greater uniformity for the lesser uniformity. Unless every district in the country has adopted a "fast track" program—and Banuelos–Rodriguez neither alleged nor provided evidence of such fact—the district court would have to choose between national uniformity and local uniformity, something I believe the district court should not be required to do.

Ironically, if allegedly similarly situated defendants in California's other three districts are given sentences significantly below Banuelos–Rodriguez's sentence and, arguably, below that contemplated by the Guidelines, then, under the majority's ruling, those defendants should be subject to upward departure to fulfill the goal of § 2L1.2. However, the Guidelines already provide the appropriate remedy where a plea agreement results in charges that do not "adequately reflect the seriousness of the actual offense behavior," U.S.S.G. § 6B1.2(a), namely, rejection of the plea agreement.

Moreover, I do not agree that *United States v. Ray*, 930 F.2d 1368 (9th Cir. 1990), as amended Apr. 23, 1991, *cert. denied*, 498 U.S. 1124, 111 S.Ct. 1084, 112 L.Ed.2d 1189 (1991), and *United States v. Boshell*, 952 F.2d 1101 (9th Cir.1991), support the majority's ruling. Banuelos–Rodriguez is not being sentenced under a different "legal regime" or "sentencing scheme" from the allegedly similarly situated defendants in California's other three districts.

In sum, I believe that in considering the "structure and theory" of § 2L1.2 and the Guidelines as a whole, as instructed under *Koon*, the alleged sentencing disparity, as it occurs in the circumstances here, is not sufficient to take this case out of the heartland of § 2L1.2. Accordingly, I respectfully dissent and would affirm Banuelos–Rodriguez's sentence.