**UNITED STATES of America**

v.

**Francis BONNET–GRULLON, Defendant.**

**No. 98 Crim. 0605(LAK).**

United States District Court, S.D. New York.

May 25, 1999.

is 70 to 87 months imprisonment. He seeks a downward departure pursuant to U.S.S.G. § 5K2.0 on the ground that similarly situated defendants who promptly agree to plead guilty in such cases in the Southern District of California are charged under a statute that permits a maximum sentence of 30 months.

### Facts

#### Defendant's Record and Plea

On March 4, 1994, defendant was convicted of criminal sale of a controlled substance, i.e., crack cocaine, in the fifth degree in New York Supreme Court, Bronx County, and sentenced to 16 months to four years imprisonment. He was deported to the Dominican Republic on February 2, 1995.

Defendant next was arrested on May 13, 1997 by New York City police officers and subsequently convicted of criminal possession of a controlled substance in the seventh degree. He was sentenced to three days incarceration.

Defendant was arrested yet again on September 23, 1997 for criminal possession of a controlled substance, heroin. He was convicted and sentenced to 90 days imprisonment. While in state custody on this offense, however, the U.S. Immigration and Naturalization Service determined that he had reentered the country illegally. In consequence, defendant was indicted in this Court on June 22, 1998 on one count of unlawful reentry following deportation for an aggravated felony in violation of 8 U.S.C. §§ 1326(a), 1326(b)(2). On October 9, 1998, he pleaded guilty to the indictment without a plea agreement. As indicated, his Guideline range, which is not controverted, is 70 to 87 months. The statutory maximum for the offense of conviction is 20 years.[1]

#### The Southern California "Fast Track" Program

The facts concerning the charging and plea policies in the Southern District of

Jay Musoff, Assistant United States Attorney, Mary Jo White, United States Attorney, New York City, for U.S.

Edward Zas, John Curley, Leonard F. Joy, Federal Defender Division, the Legal Aid Society, New York City, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This case demonstrates that the goal of sentencing uniformity which underlay the enactment of the Sentencing Reform Act may and, in some circumstances, is undermined dramatically by the vast scope of charging discretion reposed in federal prosecutors.

Defendant Francis Bonnett–Grullon pleaded guilty to unlawfully entering the United States after having been deported subsequent to a conviction for an aggravated felony. The Guideline range in his case

---

1. 8 U.S.C. § 1326(b)(2).

California have been stipulated for purposes of this application.

Prior to 1998, the United States Attorney's Office for the Southern District of California instituted a "fast track" program whereby "[i]n all but the most serious cases," a defendant otherwise potentially chargeable under 8 U.S.C. § 1326(b) "was allowed to plead guilty to a violation of 8 U.S.C. § 1326(a), which carries a maximum term of two years. The conditions for the reduced sentence were that the defendant (1) waive indictment; (2) forgo motions; (3) waive presentence report; (4) stipulate to a particular sentence (usually 24 months); (5) submit to immediate sentencing; (6) waive all sentencing appeals; (7) consent to the entry of an order, issued by an Immigration Judge or officer, removing defendant from the United States upon conclusion of his or her prison term; and (8) waive all appeals of the removal order." [2]

In March 1998, the Supreme Court decided *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350,[3] in which it held that 8 U.S.C. § 1326(b)(2) is a penalty provision rather than a separate crime. This affected the "fast track" program because it eliminated the guarantee of a 24 month sentence for an early plea to a charge under 8 U.S.C. § 1326(a). In consequence, the San Diego United States Attorney's Office modified the program to "permit criminal aliens in appropriate cases to plead guilty to two counts of violating the illegal entry statute,

8 U.S.C. § 1325. The first count is a six-month misdemeanor and the second is a two year felony. Thus, the combined 'cap' is 30 months, a six-month increase in sentence under [a] ... 1326(a) plea." [4]

The reason for the San Diego fast-track program is not difficult to fathom. Approximately one-half of all undocumented aliens apprehended in the United States each year are caught in the Southern District of California.[5] "The fast track system allowed [an] explosion in filings to be accomplished ... with limited staff increases and, for the most part, without diverting resources from other prosecutive priorities." [6]

### Discussion

Section 3553(b) of Title 18, which is implemented by Section 5K2.0 of the Guidelines, permits a district court to depart from the Guideline range if it "find[s] that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." [7] Departures are appropriate where the Guidelines do "not adequately take into account cases that are, for one reason or another, 'unusual.' " [8]

The Guidelines "list[ ] certain factors which never can be bases for departure ..., but then state that, with the exception of those listed factors, [they] 'do[ ] not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case.' " [9] The

**2.** Alan D. Bersin and Judith S. Feigin, *The Rule of Law at the Margin: Reinventing Prosecution Policy in the Southern District of California,* 12 GEO. IMMIG. L.J. 285, 287, 301 (1998) (*"Bersin Article"*) (statement adopted in letter from AUSA Musoff to Court, Apr. 5, 1999, at 3 n. 1).

**3.** 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).

**4.** *Bersin Article* at 302 n. 26 (adopted in letter from AUSA Musoff to Court, Apr. 5, 1999, at 3 n. 1).

**5.** *Id.* at 287.

**6.** *Id.* at 302.

**7.** 18 U.S.C. § 3553(b).

**8.** *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 2044, 135 L.Ed.2d 392 (1996) (quoting 1995 U.S.S.G. ch. 1, pt. A, intro. comment. 4(b)).

**9.** *Id.* (quoting 1995 U.S.S.G. ch. 1, pt. A, intro. comment. 4(b)).

Guidelines then go on to provide "considerable guidance as to the factors that are apt or not apt to make a case atypical, by listing certain factors as either encouraged or discouraged bases for departure." [10] If a factor is not mentioned in the Guidelines at all—that is, it is neither a forbidden nor an encouraged basis for departure—"the court must, after considering the 'structure and theory of both relevant individual guidelines and the Guidelines taken as a whole,' decide whether it is sufficient to take the case out of the Guideline's heartland." [11]

The Sentencing Guidelines do not explicitly address departures based on disparities in sentences in consequence of plea bargaining or differing charging practices of different prosecutors' offices. The question before the Court therefore is whether the "structure and theory of … the Guidelines taken as a whole" permit departures on this basis. On this point, however, the Court does not write on a blank slate.

Defendant relies on the Ninth Circuit's recent decision in *United States v. Banuelos–Rodriguez*, [12] the facts of which are virtually identical to this case. The defendant there was charged in the Central District of California with illegal reentry following deportation for an aggravated felony in violation of 8 U.S.C. §§ 1326(a), (b)(1) and (b)(2) and pled guilty to the indictment. His motion for a downward departure based on the sentencing disparities created by the Southern District of

California "fast track" program was denied, he was sentenced to 70 months imprisonment, and he appealed.

A divided panel of the Ninth Circuit reversed. It began by noting that sentencing disparities among federal districts that arise from plea-bargaining practices of U.S. Attorney's offices are not forbidden factors under the Guidelines. [13] It therefore analyzed the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole." [14] It concluded that U.S.S.G. § 2L1.2 "could support a finding that [the defendant's] case is not within the heartland" because the Guideline manifested an intention to increase the severity of the sentence for illegal reentry in proportion to the seriousness of the defendant's criminal history, whereas the San Diego "fast track" program made the place of arrest "the single most influential factor" in sentencing for this crime. [15] It found support for a departure also in the Guidelines as a whole, reasoning that their overall purpose of "eliminat[ing] sentencing disparity" was inconsistent with the result dictated in the absence of a departure. [16] In consequence, it remanded for resentencing "so that the district court may exercise its discretion and determine whether the unique circumstances of [the defendant's] case cause it to fall outside of the Sentencing Guidelines' 'heartland.'" [17]

Judge Wexler, sitting by designation, dissented. Although he agreed that sen-

---

**10.** "Encouraged factors" include those which the Sentencing Commission admittedly has been unable to take into account fully in formulating the guidelines. *Id.* 116 S.Ct. at 2045 (quoting 1995 U.S.S.G. § 5K2.0). The presence of an encouraged factor, however, is not necessarily a sufficient basis for a departure, "for on some occasions the applicable Guideline will have taken the encouraged factor into account." *Id.* In such a case, the encouraged factor may serve as the basis for a departure, but only if the factor "is present to a degree substantially in excess of that which ordinarily is involved in the offense." *Id.* (quoting 1995 U.S.S.G. § 5K2.0).

"Discouraged factors … are those 'not ordinarily relevant'" in considering departures. *Id.*

**11.** *Id.* (internal citation omitted).

**12.** 173 F.3d 741 (9th Cir.1999).

**13.** *Id.* 742.

**14.** *Id.* 743.

**15.** *Id.* 743.

**16.** *Id.* 743–744.

**17.** *Id.* 747.

tencing disparities among federal districts resulting from varying plea bargaining practices is not a forbidden factor under the Guidelines, he found nothing in the defendant's actions to take the case out of the Guideline range because his "offense conduct falls squarely within the heartland of § 2L1.2." [18] He argued also that the Sentencing Commission addressed the possibility of sentence disparity resulting from plea bargaining by incorporating "various checks on plea-bargaining practices through policy statements to be used by federal courts in deciding whether to accept plea agreements." [19] Moreover, he pointed out that the logic of defendant's argument supported upward departures in the cases of defendants sentenced in the Southern District of California rather than a downward departure in the case before the Ninth Circuit, although he expressed the view that the proper remedy for inadequate plea arrangements in Southern California is found in the ability of judges in that district to reject plea agreements that do not "adequately reflect the seriousness of the actual offense behavior." [20]

Although the Second Circuit has not yet been presented with precisely the issue decided by the Ninth in *Banuelos–Rodriguez*, there is a guidepost that indicates that it is far more likely to adopt Judge Wexler's dissent than the panel majority opinion as the law of this Circuit. Indeed, the guidepost is so clear that this Court,

bound as it is by the law of the Circuit, would not regard itself as free to adopt the defendant's argument here even if it agreed with the Ninth Circuit.

*United States v. Stanley* [21] involved, among other things, the practice of one United States Attorney's office of charging defendants who used firearms in connection with narcotics offenses and who agreed to plead guilty only with the narcotics offense while charging those who went to trial with a firearms count under 18 U.S.C. § 924(c), conviction on which carries a five year sentence consecutive to the sentence on the narcotics count. The district court granted a motion for a downward departure of such a defendant based on the disparity of sentences between those who pleaded guilty and thus avoided the firearms charges and those who did not and faced consecutive five year sentences. But the Circuit reversed. It noted that the Supreme Court has upheld plea bargaining, including the practice of threatening a defendant with more serious penalties in the event of conviction after trial than are offered in exchange for a guilty plea.[22] It focused on the fact that the Sentencing Commission had decided not to make major changes in plea bargaining practices, choosing instead to "provide guidance by issuing general policy statements concerning the acceptance of plea agreements." [23] It therefore conclud-

**18.** *Id.* 747.

**19.** *Id.* 748.

**20.** *Id.* 748 (quoting U.S.S.G. § 6B1.2(a)) (internal quotation marks omitted).

**21.** 928 F.2d 575 (2d Cir.1991), *cert. denied*, 502 U.S. 845, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991).

**22.** *Id.* at 581–82.

**23.** *Id.* at 582 (quoting U.S.S.G., Ch. 1, Part A, Introduction 4(c) (Nov.1990) (internal quotation marks omitted)); *accord, United States v. Torres–Echavarria*, 129 F.3d 692, 697 (2d Cir. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1177, 140 L.Ed.2d 185 (1998).

The Sentencing Commission's reliance upon the power of a district judge to reject a plea agreement that does not adequately reflect the seriousness of the offense conduct is warranted only to a limited extent. FED. R. CRIM. P. 11 permits a district judge to reject a plea agreement only if the agreement requires the government to move for dismissal of other charges or provides for a specific sentence as appropriate disposition of the case. *E.g., United States v. Burruezo*, 704 F.2d 33, 37 (2d Cir.1983); *United States v. Spiegelman*, 4 F.Supp.2d 275, 283–84 n. 67 (S.D.N.Y.1998). In consequence, pre-indictment charge bargaining is wholly outside district court control provided only that the plea agreement does not require a specific sentence. The San Diego "fast track" program, requiring as it apparently does the waiver of indictment, ap-

ed that the disparities created by the prosecutor's plea agreement policy provided no basis for a departure.[24] Although the Court expressed misgivings concerning the extent to which the Guidelines and its decision transferred discretion from sentencing judges to prosecutors, it noted that Congress and the Sentencing Commission were free to address the issue.[25]

*Stanley* differs in one significant respect from this case. As far as the Court of Appeals opinion discloses, every comparably situated defendant in the district in question in *Stanley* at some point faced a choice between pleading guilty to the narcotics charge or going to trial and facing the firearms charge as well. Each therefore had an opportunity to accept the proffered bargain and avoid the gun charge. Here, on the other hand, the California "fast track" program is not available to defendants in this Court. Their fate, with respect to the risk of a lengthy rather than a comparatively short sentence for illegal reentry, depends on where they are arrested. Given the Circuit's reasoning, however, that distinction is immaterial.

The Circuit's fundamental point in *Stanley* was that no departure was permissible because the Sentencing Commission considered the fact that plea bargaining practices result in sentencing disparities, but elected to make no substantial changes in the practice in favor of a more cautious and incremental approach.[26] The Commission, broadly stated, decided to accept the sentencing disparities that come from the traditional exercise of prosecutorial discretion. Despite the fact that the circumstances here differ in the respect noted

above, the disparity at issue in this case is no different in principle from that in *Stanley*. In each case, it is the product of prosecutorial decisions not to prefer certain charges in exchange for guilty pleas which permit scarce resources to be employed for other purposes. The fact that *Stanley* involved a policy of a single U.S. Attorney's office whereas this case involves the interplay between policies of two different prosecutors is of no legal significance, given that both sorts of disparities existed long before the enactment of the Sentencing Reform Act and therefore were within the contemplation of the Sentencing Commission.

### Conclusion

The goal of the Sentencing Reform Act, as defendant argues, was to eliminate "unwarranted sentencing disparities This case illustrates the fact that the regime that it enacted is an imperfect means to that end—it is difficult to imagine a sentencing disparity less warranted than one which depends upon the accident of the judicial district in which the defendant happens to be arrested. Moreover, the adjustment mechanism contemplated by the Act—the creation of the Sentencing Commission "to provide certainty and fairness in meeting the purposes of sentencing [and to] avoid[ ] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct"[27] by revising the Sentencing Guidelines as circumstances require[28]—has been paralyzed by the persistence of unfilled vacancies which preclude the Commission from acting.[29] Nevertheless, in view of

---

pears to be structured in a manner that precludes the rejection of plea agreements by the court for that district.

24. *Id.* at 582–83.

25. *Id.* at 583.

26. *See also* Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L. Rev. 1, 29–30 (1988).

27. 28 U.S.C. § 991(b)(1)(B).

28. *Id.* § 994.

29. *See id.* § 994(a), (p) (requiring affirmative vote of four members to promulgate or amend sentencing guidelines). All seven voting seats on the Sentencing Commission are vacant. Indeed, the last voting member left the Commission in October 1998.

this Court's inability to distinguish *Stanley* on any principled basis, it holds that the sentencing disparity that results from the different charge bargaining practices employed in the Southern Districts of California and New York, respectively, does not permit this Court to depart downward under the Sentencing Guidelines.[30] Accordingly, defendant's motion for a downward departure is denied.[31]

SO ORDERED.

---

**30.** This conclusion is consistent with recent bench decisions by two other judges of this Court. *United States v. Santana–Cruz*, No. 98 Crim. 825(RCC), Tr. 5/18/99, at 11–13; *United States v. Almonte*, No. 98 Crim. 666(JFK), Tr. 5/12/99, at 5, 8.

**31.** The Court expresses no view as to whether it would grant a departure if a departure were permissible as a matter of law.