**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose GONZALEZ–PORTILLO, also known as Jose Gonzalez, also known as Vinicio Reyes, also known as Armando Rodriguez, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Juan MARTINEZ–ROJAS,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jesus A. FUNES, also known as Rodolfo Avila, also known as Jesus A. Funes–Gomez, also known as Jesus A. Gomez–Funes, Defendant–Appellant.**

**Nos. 96–3382, 96–3785 and 96–3880.**

United States Court of Appeals,
Seventh Circuit.

Argued April 16, 1997.

Decided Aug. 19, 1997.

---

John H. Campbell, Office of the United States Attorney, Peoria, IL, Rodger A. Heaton (argued), Office of the United States Attorney, Springfield, IL, for Plaintiff–Appellee in Nos. 96–3382, 96–3880.

George F. Taseff (argued), Office of the Federal Public Defender, Peoria, IL, for Defendant–Appellant.

Rodger A. Heaton (argued), Office of the United States Attorney, Springfield, IL, Jeffrey B. Lang, Office of the United States Attorney, Rock Island, IL, for Plaintiff–Appellee in No. 96–3785.

Before ROVNER, DIANE P. WOOD, and EVANS, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Jose Gonzalez–Portillo, Juan Martinez–Rojas and Jesus Alberto Funes were all convicted of violating 8 U.S.C. § 1326, which prohibits deported aliens from returning to the United States without first gaining permission of the Attorney General. At sentencing, the defendants sought and were denied downward departures from the United States Sentencing Guidelines range based on the fact that they were deportable aliens. The defendants argued that their status as deportable aliens would lead to harsher conditions of confinement because it disqualified them from serving any portion of their sentences in minimum security institutions, halfway houses, community correction centers, or home confinement. In addition, they will face deportation upon completion of their sentences. We have consolidated these appeals to consider whether the district court erred in rejecting deportable alien status as a basis for downward departure.

## I.

■■ In general, we review decisions regarding departures from the Guidelines range for an abuse of discretion. *Koon v. United States,* ── U.S. ──, ──, 116 S.Ct. 2035, 2043, 135 L.Ed.2d 392 (1996); *United States v. Purchess,* 107 F.3d 1261, 1270 (7th Cir.1997); *United States v. Otis,* 107 F.3d 487, 490 (7th Cir.1997). That standard ap-

plies to both factual determinations and, as here, "review to determine that the discretion was not guided by erroneous legal conclusions." *Koon,* —— U.S. at ——, 116 S.Ct. at 2048; *see also Purchess,* 107 F.3d at 1270. Although *Koon* adopts this unitary standard for both legal and factual determinations, it does not require deference to the district court's resolution of purely legal questions.[1] *Koon,* —— U.S. at ——, 116 S.Ct. at 2047, *see also United States v. Gonzalez,* 112 F.3d 1325, 1328 (7th Cir.1997); *United States v. Tai,* 41 F.3d 1170, 1176 (7th Cir.1994).[2]

18 U.S.C. § 3553(b) authorizes a district court to depart from the applicable Guidelines range when "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Guidelines section 5K2.0 contains the Sentencing Commission's policy statement on departures and finds them appropriate when there are factors "that have not been given adequate consideration by the Commission," or if "in light of unusual circumstances, the guideline level attached to that factor is inadequate." In its discussion of 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0, the Supreme Court in *Koon* summarized the proper approach to departures in this way:

> If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is autho-

rized to depart *if the applicable Guideline does not already take it into account.* If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present.

—— U.S. at ——, 116 S.Ct. at 2045 (emphasis added).

■ Here, defendants were sentenced under Guidelines section 2L1.2, entitled "Unlawfully Entering or Remaining in the United States." The guideline applies to infractions of several Title 8 immigration laws, all of which pertain to unlawful presence in the United States. *See* U.S.S.G. Appendix A. Thus, as noted by the Sixth Circuit,

> [a]ll of the[ ] crimes [to which section 2L1.2 applies] may be committed only by aliens, and most, if not all, of those aliens are deportable. *See* 8 U.S.C. § 1251(a)(1)(B) (an alien is deportable if, inter alia, the alien is in the United States in violation of the immigrations laws).

*United States v. Ebolum,* 72 F.3d 35, 38 (6th Cir.1995). Because deportable alien status is an inherent element of the crimes to which the guideline applies, this factor was clearly "taken into consideration by the Sentencing Commission in formulating the guideline[ ]" (18 U.S.C. § 3553(b)) and was accounted for

---

1. As *Koon,* —— U.S. at ——–——, 116 S.Ct. at 2047–48 (citations omitted), explains:

 This does not mean that district courts do not confront questions of law in deciding whether to depart. In the present case, for example, the Government argues that the District Court relied on factors that may not be considered in any case. The Government is quite correct that whether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point. Little turns, however, on whether we label review of this particular question abuse of discretion or *de novo,* for an abuse of discretion standard does not mean a mistake of law is beyond appellate correction. A district court by definition abuses its discretion when it makes an error of law. That a departure decision, in an occasional case, may call for a

legal determination does not mean, as a consequence, that parts of the review must be labeled *de novo* while other parts are labeled an abuse of discretion. The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.

2. Our jurisdiction to review the district court's failure to depart arises because the district court's decision was based on the legal determination that it lacked authority to do so (*see, e.g., United States v. Gonzalez–Portillo,* Sept. 19, 1996 Tr. at 22, "[T]he law that I am to apply simply does not provide for a deviation from the guidelines. . . ."). *See Williams v. United States,* 503 U.S. 193, 197, 112 S.Ct. 1112, 1118, 117 L.Ed.2d 341 (1992).

in the offense levels it established. Like the Sixth Circuit, "we must assume that the Sentencing Commission took deportable alien status into account when formulating a guideline that applies almost invariably to crimes, such as 8 U.S.C. § 1326, that may be committed only by aliens whose conduct makes them deportable." *Ebolum*, 72 F.3d at 38; *see also United States v. Clase–Espinal*, 115 F.3d 1054 (1st Cir.1997) (Stipulation of alienage and deportability does not justify downward departure from section 2L1.2 sentencing range because Sentencing Commission would have considered deportability of aliens convicted of illegal reentry.)

Defendants cite *United States v. Smith*, 27 F.3d 649 (D.C.Cir.1994), which held that the harsher conditions of confinement faced by a deportable alien may justify a downward departure. In that case, however, the defendant had been convicted of possessing cocaine base with intent to distribute and was therefore sentenced under a guideline that did not already take his deportability into consideration. For that reason, the defendant's ineligibility for minimum security or other less onerous forms of incarceration did subject him to harsher conditions of confinement than others sentenced under the same guideline.[3] His special status may indeed have constituted a factor not otherwise taken into consideration in the formulation of the guideline under which he was sentenced. But that distinguishes *Smith* from the instant case. As the Supreme Court made clear in *Koon*, a factor that may otherwise justify a departure will not do so when, as here, it is already accounted for in the applicable guideline:

Even an encouraged factor is not always an appropriate basis for departure, for on some occasions the applicable Guideline will have taken the encouraged factor into account. For instance, a departure for disruption of a governmental function "ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases interference with a government function is inherent in the offense."

—— U.S. at ——, 116 S.Ct. at 2045 (quoting U.S.S.G. § 5K2.7). Because all crimes covered by section 2L1.2 involve illegal presence in the United States by aliens, deportability was certainly accounted for in the guideline. The district court did not err in deeming deportable alien status an inappropriate basis for departure in these cases. *Accord Ebolum*, 72 F.3d at 38–39; *United States v. Mendoza–Lopez*, 7 F.3d 1483, 1487 (10th Cir. 1993), *cert. denied*, 511 U.S. 1036, 114 S.Ct. 1552, 128 L.Ed.2d 201 (1994).

## II.

■ Gonzalez–Portillo also asks us to review the increase in offense level he received under Guidelines section 2L1.2(b)(2). That section provides for a 16–level enhancement "[i]f the defendant previously was deported after a conviction for an aggravated felony." The enhancement was applied to Gonzalez–Portillo because his previous conviction in 1986 had been for aggravated criminal sexual assault.[4] Gonzalez–Portillo argues that he should not have received the increase because the statutory source of the enhancement is found in the Immigration Act of 1990 ("IMMACT"), which is not retroactively applicable.[5] The Sentencing Commission

3. Several other courts of appeals have found departures based on deportability to be inappropriate, even in cases, like *Smith*, in which that status was not an inherent aspect of the crime of conviction. *See United States v. Restrepo*, 999 F.2d 640, 645–47 (2d Cir.), *cert. denied*, 510 U.S. 954, 114 S.Ct. 405, 126 L.Ed.2d 352 (1993); *United States v. Adubofour*, 999 F.2d 639, 640 (2d Cir.1993) (applying *Restrepo*); *United States v. Veloza*, 83 F.3d 380, 382 (11th Cir.1996); *see also United States v. Nnanna*, 7 F.3d 420, 422 (5th Cir.1993) (district court did not abuse its discretion in sentencing deportable alien at top of Guidelines range). We have not yet decided this issue (*see United States v. Jackson*, 93 F.3d

335, 338 (7th Cir.1996)) and need not reach it here.

4. "Aggravated felony" is defined in Application Note 7 to Guidelines section 2L1.2 to include "any crime of violence (as defined in 18 U.S.C. § 16, not including a purely political offense) for which the term of imprisonment imposed ... is at least five years...."

5. 8 U.S.C. § 1326(b) was amended in 1988 to impose a maximum sentence of 15 years if the deportation followed conviction for an "aggravated felony." The definition of "aggravated felony," contained in 8 U.S.C. § 1101(a)(43), was amended as part of IMMACT. The IMMACT

amended Guidelines section 2L1.2 in 1991 in a manner that parallels the statutory enhancement, but did not correspondingly limit the guideline's effective date. In *United States v. Munoz–Cerna*, 47 F.3d 207 (7th Cir.1995), we addressed the argument, now raised by Gonzalez–Portillo, that the guideline enhancement should not be applied in cases to which the statutory enhancement is inapplicable. We rejected the proposition in that case, concluding that "no symmetry was intended between the aggravated felony provisions of IMMACT and the aggravated felony provisions of the guideline." 47 F.3d at 212. Gonzalez–Portillo has offered no reason that persuades us to reconsider our earlier holding at this time. The enhancement of his sentence under Guidelines section 2L1.2(b)(2) was proper.

### III.

The sentences of Jose Gonzalez–Portillo, Juan Martinez–Rojas and Jesus Alberto Funes are AFFIRMED.

definition applies only to "offenses committed on or after ... [Nov. 29, 1990]." *United States v. Munoz–Cerna*, 47 F.3d 207, 209 (quoting IM-MACT § 501(b)). The parties do not dispute that aggravated sexual assault comes within the amended but not the pre-IMMACT definition.