UNITED STATES of America, Plaintiff–Appellee,

v.

Efrain MARTINEZ–RAMOS, aka Oscar Ocampo Melendez, Defendant–Appellant.

No. 98–50536.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1999

Filed July 29, 1999

Richard D. Burda, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Miriam A. Krinsky (argued) and Lizabeth A. Rhoades, Assistant United States Attorneys, Los Angeles, California, for the plaintiff-appellee.

Before: BRUNETTI, RYMER and SILVERMAN, Circuit Judges.

RYMER, Circuit Judge:

Efrain Martinez–Ramos appeals the sentence imposed following his guilty plea to being an illegal alien found in the United States, in violation of 8 U.S.C. § 1326, because the district court felt it had no discretion to depart downward on the ground that there was unwarranted disparity in plea bargaining practices among the United States Attorney's Offices in the federal districts of California, or on the ground that his sentence would be more severe than most because his alien status renders him ineligible for minimum security incarceration and community confinement. We must reverse and remand with respect to the first ground, because in the meantime we held in *United States v. Banuelos–Rodriguez*, 173 F.3d 741 (9th Cir. 1999), that sentencing disparity for a § 1326 violation which arises from different plea-bargaining policies in the Central and Southern Districts of California can be a valid basis for downward departure. However, Martinez–Ramos's status as a deportable alien cannot be a ground for downward departure because deportable alien status is an element of the crime that was necessarily taken into account by the Sentencing Commission in crafting the offense level for a § 1326 violation. We therefore affirm as to that ground.

## I

Martinez–Ramos pled guilty to a first superseding information charging him with one count of being an illegal alien in the United States following deportation without permission, in violation of 8 U.S.C. § 1326.[1] The Presentence Report ("PSR") calculated a total adjusted offense level of 24 (a base offense level of 8, plus a 16–level enhancement because Martinez–Ramos had previously been deported after conviction for an aggravated felony, under U.S.S.G. § 2L1.2[2]). The PSR also recom-

---

1. 8 U.S.C. § 1326 (Supp.1998), "Reentry of removed aliens," provides in pertinent part:

    (a) **In general**
    Subject to subsection (b) of this section, any alien who–
    (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
    (2) ... is at any time found in, the United States ...
    shall be ... imprisoned not more than 2 years....
    (b) **Criminal penalties for reentry of certain removed aliens**
    Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection–

    (1) whose removal was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be ... imprisoned not more than 10 years ...;
    (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be ... imprisoned not more than 20 years....

2. U.S.S.G. § 2L1.2 (1998), "Unlawfully Entering or Remaining in the United States," provides in relevant part:

    (b) *Specific Offense Characteristic*
    (1) If the defendant previously was deported after a criminal conviction, or if the defendant unlawfully remained in the

mended a 3–level downward departure for acceptance of responsibility and figured Martinez–Ramos's criminal history at level VI, resulting in an applicable guidelines range of 77 to 96 months.

Martinez–Ramos sought departure on three grounds, only two of which concern us on appeal. The first the district court granted, finding that Martinez–Ramos's criminal history was overrepresented due to the minor nature of his previous aggravated felony convictions. But the court refused to depart on either of the other two grounds—that there is a disparity in sentencing between federal districts, or that Martinez–Ramos's status as a deportable alien subjected him to a harsher sentence than citizens and non-deportable aliens because he was ineligible to serve the final portion of his sentence somewhere other than prison—as it felt that it lacked discretion to do so.

The court then found that for an adjusted offense level of 21 with criminal history III the applicable guidelines range was 46 to 57 months, and sentenced Martinez–Ramos to 46 months plus a term of three years supervised release. Martinez–Ramos timely appealed.

## II

■ By now it is settled that a district court's discretionary refusal to depart from the Sentencing Guidelines is not reviewable on appeal. *See United States v. Tucker*, 133 F.3d 1208, 1214, 1219 (9th Cir.1998). If the district court indicates, however, that it does not have discretion under the guidelines to depart, we review that determination de novo. *See id.*

## III

■ Although it was an open issue when the district court ruled and the briefs on appeal were filed, we have since held that a district court has discretion to depart downward based upon an asserted disparity in plea bargaining practices among the United States Attorney's Offices in the federal districts of California. *See Banuelos–Rodriguez*, 173 F.3d at 742. *Banuelos–Rodriguez* therefore controls, and we must reverse and remand for resentencing on this point.

## IV.

■ Relying on our previous recognition of a district court's authority in non-§ 1326 cases to consider a downward departure on the ground of deportable alien status, *see United States v. Charry Cubillos*, 91 F.3d 1342 (9th Cir.1996); *United States v. Davoudi*, 172 F.3d 1130 (9th Cir. 1999), Martinez–Ramos argues that the court should also have discretion to depart downward on account of deportable status in his case. In both *Charry Cubillos* and *Davoudi* the defendant sought downward departure because his status as a deportable alien made him ineligible for community or home confinement, and minimum security imprisonment. In each case we acknowledged that the district court has legal discretion to depart downward because of the defendant's status as a deportable alien. But *Charry Cubillos* and *Davoudi* are significantly different from this case, as both involved offenses in which the defendant's status as an alien was irrelevant, whereas Martinez–Ramos was convicted of a § 1326 offense in which the defendant's status as an illegal alien is part and parcel of the crime. *Charry Cubillos* was convicted of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1), and Davoudi for making false statements to federally-insured banks in violation of 18 U.S.C. § 1014. In neither case did the crime or the guidelines for the crime have anything to do with the defendant's status as a deportable alien.

United States following a removal order issued after a criminal conviction, increase as follows (if more than one applies, use the greater):

(A) If the conviction was for an aggravated felony, increase by **16** levels.

As we explained in *Charry Cubillos,* "[a]fter *Koon,* federal courts can no longer categorically proscribe a basis for departure-unless the Commission has proscribed, as a categorical matter, consideration of the factor." *Charry Cubillos,* 91 F.3d at 1344 (discussing *Koon v. United States,* 518 U.S. 81, 109, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). Of course this could not be said of the guidelines for drug and false statement offenses.

However, in this case, the crime itself assumes an alien who is deportable, and sentencing necessarily involves a defendant who is a deportable alien. A defendant cannot be guilty of violating § 1326(a) unless he has previously "been denied admission, excluded, deported, or removed" from the United States, *see* 8 U.S.C. § 1326(a)(1), yet this is the very status that Martinez–Ramos advances as grounds for a downward departure. All defendants found guilty of violating § 1326(a) will be deportable aliens, subject to the same sentencing constraints that apply to all other defendants found guilty of violating § 1326(a). Thus, unlike in *Charry Cubillos,* there is not even an arguable "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Likewise, the Sentencing Commission by definition must have factored deportable alien status into U.S.S.G. § 2L1.2, the guideline for a § 1326(a) offense, for the defendant's status as a deportable alien found in the United States without permission is the very thing being punished.

Accordingly we join the Sixth and Seventh Circuits in holding that deportable status may not be a ground for downward departure from the applicable guideline range for aliens who are deportable. *See United States v. Gonzalez–Portillo,* 121

F.3d 1122 (7th Cir.1997), *cert. denied,* — U.S. ——, 118 S.Ct. 720, 139 L.Ed.2d 660 (1998); *United States v. Ebolum,* 72 F.3d 35 (6th Cir.1995).[3] In *Ebolum* as here, the defendant was found in the United States in violation of § 1326 and was sentenced under U.S.S.G. § 2L1.2. He also requested a downward departure based on his status as a deportable alien. The court reasoned:

> Absent any credible argument or evidence to the contrary, we must assume that the Sentencing Commission took deportable alien status into account when formulating a guideline that applies almost invariably to crimes, such as 8 U.S.C. § 1326, that may be committed only by aliens whose conduct makes them deportable. Therefore, the district court's determination that it could not depart downward on the basis of deportable alien status in this case was correct.

*Ebolum,* 72 F.3d at 38. Similarly in *Gonzalez–Portillo,* decided after *Koon,* the defendants were convicted of violating § 1326 and argued that their status as deportable aliens would lead to harsher conditions of confinement because they were disqualified from serving any portion of their sentences in minimum security institutions, half-way houses, community correction centers, or home confinement. Following *Ebolum,* the court noted that "[b]ecause deportable alien status is an inherent element of the crimes to which the guideline applies, this factor was clearly 'taken into consideration by the Sentencing Commission in formulating the guideline[ ]' (18 U.S.C. § 3553(b)) and was accounted for in the offense levels it established." *Gonzalez–Portillo,* 121 F.3d at 1124–25.

We agree that "deportability was certainly accounted for" in U.S.S.G. § 2L1.2, *id.* at 1125, since all crimes covered by it

**3.** The First Circuit has also pointed out "that the Sentencing Commission was fully cognizant that virtually all alien criminal defendants, convicted under 8 U.S.C. § 1326(a) and sentenced pursuant to U.S.S.G. § 2L1.2, would be subjected to deportation...." *United States v. Clase–Espinal,* 115 F.3d 1054, 1059 (1st Cir.), *cert. denied,* — U.S. ——, 118 S.Ct. 384, 139 L.Ed.2d 299 (1997) (district court lacks authority to depart downward because defendant's stipulation to deportation did not constitute a mitigating circumstance not contemplated by the Commission).

involve an alien being found illegally in the United States, who is for that reason deportable. That being so, departure on account of deportable status for aliens convicted of § 1326 offenses fits squarely within *Koon*'s perimeters and is proscribed. The district court did not err in believing that it lacked discretion to depart downward on the basis of Martinez-Ramos's status as a deportable alien.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**