In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3919

United States of America,

Plaintiff-Appellee,

v.

Reymundo Martinez-Carillo,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 CR 317--Ruben Castillo, Judge.

Argued April 5, 2001--Decided May 17, 2001


   Before Bauer, Ripple, and Evans, Circuit
Judges.

   Bauer, Circuit Judge.  Reymundo Martinez-
Carillo, a/k/a Raymundo Martinez, appeals
from the sentence imposed by the district
court based upon his illegal entry into
the United States after deportation.
Martinez-Carillo takes issue with three
of the district court's rulings, which
ultimately affected the length of his
sentence. We affirm all of the district
court's conclusions.

BACKGROUND

   Martinez-Carillo, a citizen of Mexico,
had been a lawful permanent resident of
the United States. In December of 1992,
he was convicted of and sentenced for
"Criminal sexual assault" under 720 ILCS
5/12-13(a)(3) (formerly Ill. Rev. Stat.
1989, ch. 38, para. 12-13-A(3)) for
inserting his finger into his daughter's
vagina, who was thirteen years old at the
time. Martinez-Carillo was deported to
Mexico on December 29, 1999 for having
been convicted of an "aggravated felony."

   Soon thereafter, on April, 19, 2000, he
was found in Winnetka, Illinois. In July,
he pled guilty to violating 8 U.S.C. sec.
1326 for unlawfully reentering the United
States without the Attorney General's
permission, but reserved the right to
contest whether his prior Illinois

conviction for "Criminal sexual assault" was indeed an "aggravated felony." At his sentencing hearing in November, the district court (1) enhanced his base offense level by sixteen levels because his prior conviction was an "aggravated felony," (2) refused to depart downward under U.S.S.G. sec. 4B1.2 because his prior conviction was a "crime of violence," and (3) refused to depart downward for conditions of confinement based on his status as a deportable alien. The district court set his sentence at forty one months imprisonment. Martinez-Carillo's appeal contests each of these decisions, which are questions of law we review de novo. See United States v. Jaderany, 221 F.3d 989, 995 (7th Cir. 2000); United States v. McMutuary, 217 F.3d 477, 483 (7th Cir. 2000).

DISCUSSION

I.  Sexual Abuse of a Minor

Martinez-Carillo challenges the conclusion that his Illinois conviction for "Criminal sexual assault" has beenlabeled as one for "sexual abuse of a minor," and is thus an "aggravated felony." We agree with the district court and hold that a conviction under 720 ILCS 5/12-13(a)(3) (formerly Ill. Rev. Stat. 1989, ch. 38, para. 12-13-A(3)) constitutes an "aggravated felony" under 8 U.S.C. sec. 1101(a)(43).

U.S.S.G. sec. 2L1.2(a) assigns a base offense level of eight to a defendant convicted of unlawfully reentering the United States. However, if the defendant's prior conviction constitutes an "aggravated felony," his or her base offense level will be enhanced by sixteen levels. See U.S.S.G. sec. 2L1.2(b)(1)(A). Application Note 1 of U.S.S.G. sec. 2L1.2 references 8 U.S.C. sec. 1101(a)(43) for the definition of "aggravated felony," and 8 U.S.C. sec. 1101(a)(43)(A) lists "sexual abuse of a minor" as an "aggravated felony." But, the statutory guidance ends here, for "[t]he phrase 'sexual abuse of a minor' is not defined in [sec. 1101(a)(43)(A)] either expressly or by reference to any other statutory provision." Lara-Ruiz v. INS, 241 F.3d 934, 940 (7th Cir. 2001).

We have expressed the need for

uniformity in determining whether a conviction falls within the federal understanding of the phrase "sexual abuse of a minor." Uniformity is particularly needed since state and federal classifications and definitions of crimes vary so wildy. For example, Martinez-Carillo argues that his conviction was not for "sexual abuse of a minor" because Illinois labels his conviction as one for "sexual assault" rather than "sexual abuse of a minor." We have held that this of no matter. See Hernandez-Mancilla v. INS, 2001 WL 357470, at *2 (7th Cir. Apr. 11, 2001) ("Since state definitions . . . vary wildly, . . . how states classify crimes is not determinative . . . ."); see also 8 U.S.C. sec. 1101(a)(43) ("The term ['aggravated felony'] applies to an offense described in this paragraph whether in violation of Federal or State law."). While we did not fashion a formal definition of "sexual abuse of a minor" in Lara-Ruiz as we did in Solorzano-Patlan v. INS, 207 F.3d 869, 874 (7th Cir. 2000) (creating a generic federal definition for "burglary" under 8 U.S.C. sec. 1101(a)(43)(G)), and do in Hernandez-Mancilla, 2001 WL 357470, at *6 (creating a generic federal definition for "theft offense (including receipt of stolen property)" under 8 U.S.C. sec. 1101(a)(43)(G)), we have deciphered that "Congress intended to give a broad meaning to the term 'sexual abuse of a minor.'" Lara-Ruiz, 241 F.3d at 942; accord United States v. Corona-Sanchez, 234 F.3d 449, 453 (9th Cir. 2000) (recognizing the "differ[ing] approaches [employed in the circuit] to testing a prior conviction for aggravated felony status").

  Further, we have explained that

[i]n determining whether Congress intended the phrase 'sexual abuse of a minor' to include conduct punished under a particular state statute, we must generally employ a categorical approach; that is, we consider only whether the elements of the state offense of which the alien was convicted--together with the language of the indictment-- constitute sexual abuse of a minor, rather than whether the alien's specific conduct could be characterized as sexual abuse of a minor.

Id. at 941. In Lara-Ruiz, we applied an exception to the categorical approach and

held that the defendant's convictions under 720 ILCS 5/12-13(a)(1) and (a)(2) (formerly Ill. Rev. Stat. 1991, ch. 38, para.para. 12-13(a)(1) & (a)(2)) constituted "sexual abuse of a minor," even though neither the statute nor the charging papers revealed the age of the victim, since the record clearly revealed that the victim was four-years old. See id. at 940-42.

This case is less complicated than Lara-Ruiz since both the statute of conviction and the charging papers reveal that the victim was a minor and that Martinez-Carillo sexually abused that victim. The statute of conviction, entitled "Criminal sexual assault," relevantly states: "(a) The accused commits criminal sexual assault if he or she: . . . (3) commits an act of sexual penetration with a victim who was under 18 years of age when the act was committed and the accused was a family member." 720 ILCS 5/12-13(a)(3) (formerly 1989 Ill. Rev. Stat. ch. 38, para. 12-13-A(3)). The charge of conviction, here the Indictment, reads: "RaymundoMartinez committed the offense of Criminal Sexual Assault in that He, committed an act of sexual penetration upon [the victim], to wit: an intrusion in that Raymundo Martinez inserted his finger into [the victim's] vagina, and [the victim] was under 18 years of age when the act was committed and Raymundo Martinez was a family member, to wit: father . . . ."

The conduct that led to conviction in this case, according to the language of the statute as well as the Indictment, was sexual penetration of a victim who was under 18 years of age. Black's Law Dictionary provides a generic understanding of the word "minor." It defines "minor" as "[a]n infant or person who is under the age of legal competence. . . . In most states, a person is no longer a minor after reaching the age of 18 . . . ." Black's Law Dictionary 997 (6th ed. 1990). Martinez-Carillo's state conviction squarely fits within the federal understanding of the phrase "sexual abuse of a minor," which adopts the ordinary, contemporary, and common meaning of the words. See, e.g., Lara-Ruiz, 241 F.3d at 940 (accepting the BIA's creation of a "generic definition of sexual abuse of a minor which was consistent with the ordinary, common-

sense meaning of th[e] phrase"); United States v. Zavala-Sustaita, 214 F.3d 601, 604-05 (5th Cir. 2000) (adopting an "'ordinary, contemporary, common'" meaning of the words by examining their dictionary definitions); United States v. Baron-Medina, 187 F.3d 1144, 1147 (9th Cir. 1999) (adopting the "common, everyday meanings of the words 'sexual' and 'minor' [and] 'abuse'"). Therefore, Martinez-Carillo's conviction was of a crime that constitutes an "aggravated felony."

II.  Crime of Violence

Martinez-Carillo requested a downward departure under U.S.S.G. sec. 2L1.2, cmt. n.5, which permits a departure if the "aggravated felony" enhancement overstates the seriousness of the defendant's prior offense. Thus, if the "aggravated felony" enhancement is applied,

and (A) the defendant has previously been convicted of only one felony offense; (B) such offense was not a crime of violence or firearms offense; and (C) the term of imprisonment imposed for such offense did not exceed one year, a downward departure may be warranted based on the seriousness of the aggravated felony.

U.S.S.G. sec. 2L1.2, cmt. n.5. The district court ruled that Martinez-Carillo was ineligible for such a departure because his prior conviction constituted a "crime of violence." Application Note 1 of U.S.S.G. sec. 2L1.2 refers to U.S.S.G. sec. 4B1.2(a) for a definition of "crime of violence," which defines it as, in part, "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . presents a serious potential risk of physical injury to another."

Relying on our opinions in Xiong v. INS, 173 F.3d 601 (7th Cir. 1999) and United States v. Shannon, 110 F.3d 382 (7th Cir. 1997) (en banc), Martinez-Carillo argues that his conduct did not create a serious potential risk of physical injury since "inserting a finger into a vagina, could not possibly lead to the pregnancy of the child." We understand Martinez-Carillo's reliance on Xiong and Shannon, for they

are among the only cases on this subject in our circuit. However, we find both distinguishable.

In both cases the crime of conviction was classified as statutory rape. See Xiong, 173 F.3d at 606-07; Shannon, 110 F.3d at 387. In Shannon, we rejected the government's contention that any sex act with a minor should be per se classified as a "crime of violence." See 110 F.3d at 385. The defendant had violated Wis. Stat. sec. 948.02(2), which forbade sexual contact or intercourse with victims under sixteen years of age. See id. at 384. In holding that a violation of the statute was not per se a "crime of violence," we determined that engaging in sexual intercourse with a thirteen- year-old girl was a "crime of violence," and reserved answering whether having sexual intercourse with a victim over thirteen was such. See id. at 387-89. In Xiong, we looked beyond the statute of conviction to the specific facts of the case and held that engaging in sexual intercourse with a fifteen-year-old girl, also a violation of Wis. Stat. sec. 948.02(2), was not a "crime of violence" because the conduct was consensual sex between boyfriend and girlfriend, and because there was no substantial age difference between the defendant and the victim. See 173 F.3d at 604-07.

In contrast to Xiong and Shannon, the felony at issue here was prosecuted under an Illinois statute outlawing incestuous penetration of a minor. Despite the general similarities between this case and Xiong and Shannon, the charging statute creates a critical difference in our analysis because each case "must be considered one by one to see whether the conduct punished by the particular law under which the defendant was convicted involves a serious risk of physical injury." Shannon, 110 F.3d at 386. This is so because "the goals behind laws forbidding sex with minors are various and need not include the goal of protecting the minor from a serious risk of physical injury." Id. We chose not to per se categorize all statutory rape cases as "crimes of violence" because statutory rape criminalizes fact patterns which may very well not involve coercion of any form, such as in Xiong. The felony at issue in this case, however, is fundamentally different; it involves

incestuous penetration of a minor; therefore, we consider anew whether this conduct creates a serious potential risk of physical injury.

In Shannon we determined, based on age, when a violation of a statutory rape statute would be labeled a "crime of violence." We found that a thirteen-year-old girl risked suffering physical injury associated with potential pregnancy. However, in this case, the sexual penetration was digital, and therefore, Martinez-Carillo argues that since there would be no potential pregnancy risk, that there is no serious potential risk of physical injury. But pregnancy risks are not the sole concern of the statute of conviction here. Rather, the statute of conviction in this case, which punishes more than sexual intercourse with a minor, is concerned with the nature of the relationship between the defendant and the child-victim. The familial bond of trust is violated by actions punished under this statute. A child-victim is likely to comply with the sexual request by or action of her father out of fear stemming from the belief that physical consequences will flow from noncompliance or simply because she trusts him not to do her wrong. We find that incest presents an aggravating factor that evokes a serious potential risk of physical injury. This was alluded to rather markedly in Shannon:

Some cases from other circuits might be read as taking the approach suggested by the government and thus deeming any felonious sex act with a minor a per se crime of violence. Most of them can be distinguished, however, as involving a prepubescent child, incest, or other aggravating factors and in none, so far as appears from [each of] the court's factual recitation, was the minor at the top of the relevant age range with no aggravating factor present.

110 F.3d at 386 (citing cases). Therefore, we conclude that Martinez-Carillo's prior conviction under 720 ILCS 5/12-13(a)(3) (formerly Ill. Rev. Stat. 1989, ch. 38, para. 12-13-A(3)) was a "crime of violence."

III. Deportable Alien Status

Finally, the district court declined to

grant a downward departure based on Martinez-Carillo's status as a deportable alien, which would subject him to harsher conditions of confinement. The district court's refusal was predicated on our opinion in United States v. Gonzalez-Portillo, 121 F.3d 1122 (7th Cir. 1997), which precludes such a departure based on deportable alien status for defendants convicted of illegal entry into the United States under 8 U.S.C. sec. 1326 and sentenced under U.S.S.G. sec. 2L1.2. Martinez-Carillo contends that Gonzalez-Portillo was wrongly decided because it is inconsistent United States v. Farouil, 124 F.3d 838 (7th Cir. 1997), and because it is out of step with Koon v. United States, 518 U.S. 81 (1996) since the courts cannot categorically proscribe a factor as a basis for departure unless the Sentencing Commission has expressly forbidden consideration of said factor. Martinez-Carillo believes that Gonzalez-Portillo creates such an impermissible categorical ban on the use of deportable alien status as a factor for departure, and thus must be overruled. We disagree.

A district court shall impose a sentence within the range spelled out in the Sentencing Guidelines "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines . . . ." 18 U.S.C. sec. 3553(b); see Koon, 518 U.S. at 92. We understand that "'for the courts to conclude that a [non-prohibited] factor must not be considered under any circumstances would be to transgress the policymaking authority vested in the Commission.'" McMutuary, 217 F.3d at 484 (quoting Koon, 518 U.S. at 106-07). Deportable alien status is not among the factors that has been prohibited by the Sentencing Commission as a basis for departure. So, we have found that "the status of being a deportable alien can affect the conditions of imprisonment . . . ," United States v. Guzman, 236 F.3d 830, 834 (7th Cir. 2001), and thus have held that a departure based on conditions of confinement for a deportable alien is generally permissible, see id.; Farouil, 124 F.3d at 846-47.

However, we have also held that such status is not a proper basis for

departure when the crime of conviction is one listed under 8 U.S.C. sec. 1326 and sentenced under U.S.S.G. sec. 2L1.2. See Gonzalez-Portillo, 121 F.3d at 1125; see also Farouil, 124 F.3d at 846. We have so held because "all crimes covered by [U.S.S.G. sec.] 2L1.2 involve illegal presence in the United States by aliens, deportability was certainly accounted for in the guideline." Gonzalez-Portillo, 121 F.3d at 1125; see Farouil, 124 F.3d at 847. However, in Farouil we found deportable alien status a permissible departure basis since the defendant was convicted for importing heroin into the United States. We explained that there was "no reason to believe that the Guidelines [had] accounted for a defendant's status as a deportable alien in setting the level for that offense." Farouil, 124 F.3d at 847. We contrasted this with our holding in Gonzalez-Portillo, noting that "when the offense for which the defendant is being sentenced encompasses being present in the United States after having been deported, we ruled that the Guidelines already took into consideration the defendant's status as a deportable alien." Id. Thus, Gonzalez-Portillo and Farouil are not inconsistent. Farouil expressly harmonizes its reasoning with that in Gonzalez-Portillo. See 124 F.3d at 846-47.

Gonzalez-Portillo does not violate the mandate in Koon because it does not create a categorical ban on the use of deportable alien status for departure; rather, it recognizes that the Sentencing Commission has already fully accounted for deportable alien status in fixing the penalty for offenses under 18 U.S.C. sec. 1326. Other circuits have since adopted the reasoning and holding in Gonzalez-Portillo. See, e.g., United States v. Garay, 235 F.3d 230, 234 (5th Cir. 2000) (joining Gonzalez-Portillo's holding that "alienage [is] an impermissible basis for departure when, as here, status as a deportable alien has necessarily been taken into account by the Sentencing Commission in establishing the offense level for the crime [which was a violation of 8 U.S.C. sec. 1326]"); United States v. Martinez-Ramos, 184 F.3d 1055, 1058-59 (9th Cir. 1999) (joining Gonzalez-Portillo's holding that "departure on account of deportable status for aliens convicted of [8 U.S.C.]

sec. 1326 offenses fits squarely within Koon's perimeters and is proscribed"). The district court's decision not to depart downward on this basis was correct.

CONCLUSION

We hereby AFFIRM the district court's rulings regarding Martinez-Carillo's sentence.

RIPPLE, Circuit Judge, concurring. I join without reservation the court's thoughtful opinion. I agree entirely with the court that there is a sufficient threat of physical injury in this case to justify designating the offense as a "crime of violence" under the existing standards that focus on physical injury. I write separately solely to suggest that this case also demonstrates the desirability of legislative action to expand the definition of "crime of violence" to encompass those situations in which the victim, while not suffering physical injury or the threat of physical injury, suffers severe psychological or emotional injury that can be diagnosed under accepted medical standards. The guidelines already authorize upward departures for many criminal acts that cause such injury, see U.S.S.G. sec. 5K2.3,/1 and therefore reflect the Sentencing Commission's recognition that crimes that result in extreme emotional and psychological trauma to their victims warrant additional punishment. See United States v. Oliver, 118 F.3d 562, 566-67 (7th Cir. 1997) (affirming district court's upward departure under sec. 5K2.3 for psychological pain inflicted on victim under the Mann Act).

There seems to be no reason why the psychological injury acknowledged in sec. 5K2.3 ought not be recognized in the definition of "crime of violence." Such a recognition would comport with our contemporary understanding as to the consequences suffered by victims of crime and would ensure that criminals who inflict this damage are treated in the same manner as those who inflict physical injury or put their victims in grave jeopardy of such injury. The emphasis on physical violence appears to result from the legislative origins of the provision—

-a provision aimed principally at getting
the physically violent offender off the
street./2 We ought to acknowledge as
well that the offender who inflicts
psychological or emotional trauma poses
the same sort of threat.

FOOTNOTES

/1 Specifically, U.S.S.G. sec. 5K2.3 authorizes
courts to depart upwards, outside the range
established by the applicable guidelines, if the
victim suffers significant psychological injury:

If a victim or victims suffered psychological
injury much more serious than that normally
resulting from commission of the offense, the
court may increase the sentence above
theauthorized guideline range. The extent of the
increase ordinarily should depend on the severity
of the psychological injury and the extent to
which the injury was intended or knowingly
risked.

Normally, psychological injury would be
sufficiently severe to warrant application of
this adjustment only when there is a substantial
impairment of the intellectual, psychological,
emotional, or behavioral functioning of a victim,
when the impairment is likely to be of an
extended or continuous duration, and when the
impairment manifests itself by physical or
psychological symptoms or by changes in behavior
patterns. The court should consider the extent to
which such harm was likely, given the nature of
the defendant's conduct.

U.S.S.G. sec. 5K2.3.

/2 Congress created the Sentencing Commission and
authorized it to promulgate sentencing guidelines
and policy statements as part of the Comprehen-
sive Crime Control Act of 1984. See United States
v. Parson, 955 F.2d 858, 863 (3d Cir. 1992). In
establishing categories of defendants for use in
the sentencing guidelines, Congress instructed
the Commission to consider eleven attributes,
including the defendant's criminal history. See
28 U.S.C. sec. 994(d)(10); Parson, 955 F.2d at
863-64. "Congress particularly wanted to ensure
that recidivist violent and drug offenders re-
ceived stiffer sentences, near the maximum term
authorized for each crime, to remove such danger-
ous offenders from the streets and to deal more
effectively with the growing problems of violent
crime." Parson, 955 F.2d at 864. Consequently,
Congress instructed the Commission to ensure that
the guidelines specify imprisonment terms at or
near the maximum authorized for defendants who
commit a "crime of violence." Id.; see 28 U.S.C.

sec. 994(h). Thus, sec.sec. 4B1.1 and 4B1.2, the career offender provisions, reflect Congress's desire to protect the public from dangerous criminals who commit violent crimes.