In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1994

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALEJANDRO ZUNIGA-GALEANA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 CR 379 — **Samuel Der-Yeghiayan**, *Judge.*

ARGUED AUGUST 5, 2015 — DECIDED AUGUST 24, 2015

Before WOOD, *Chief Judge*, and BAUER and MANION, *Circuit Judges*.

PER CURIAM. Defendant-Appellant, Alejandro Zuniga-Galeana ("Zuniga"), pleaded guilty to illegal reentry after deportation, *see* 8 U.S.C. § 1326(a), and was sentenced to 41 months' imprisonment. He appeals, arguing that the district court improperly increased his total offense level by 16 for previously having been convicted of a "crime of violence," *see* U.S.S.G. § 2L1.2(b)(1)(A)(2014)—specifically, a 1991 con-

viction in Illinois for aggravated criminal sexual abuse. He contends that the categorical approach requires a narrower understanding of the generic definitions of "sexual abuse of a minor" and "statutory rape," two crimes of violence enumerated under the guideline, than was held by the district court, so his 1991 conviction should not have been considered a crime of violence. For the reasons that follow, we affirm.

## I. BACKGROUND

Zuniga entered the country unlawfully from Mexico in 1989. In September 1991, he was convicted in Illinois state court of aggravated criminal sexual abuse. *See* 720 ILCS 5/11–1.60(d).[1] At the time Zuniga, then 30 years old, was in a consensual, romantic relationship with a 15-year-old girl. The statute criminalizes "an[y] act of sexual penetration or sexual conduct with a victim who is at least 13 years of age but under 17 years of age [if] the person is at least 5 years older than the victim." Zuniga was sentenced to 80 days' imprisonment. He and the girl maintained their relationship for several years and had four children together.

Shortly after his conviction, Zuniga was deported. He soon returned to the United States, again unlawfully, ostensibly to help care for his minor children. He apparently resided in the United States without incident until 2007, when he was arrested for domestic battery following an altercation with his eldest child. The charges were nolle prossed.

---

[1] Illinois has reorganized its statute books since 1991, but the definition of Zuniga's particular offense has remained unchanged. We thus use the current citation.

Six years later, in 2013, Zuniga was charged with illegal reentry, and he pleaded guilty shortly thereafter. *See* 8 U.S.C. § 1326(a). The plea agreement contemplated a total offense level of 21 and a criminal history category of II. According to the plea agreement, Zuniga's base offense level would be 8, *see* U.S.S.G. § 2L1.2(a), and he would receive a 16-level upward adjustment because he was previously deported after a "crime of violence"—the 1991 conviction—*see id.* § 2L1.2(b)(1)(A)(ii), and a 3-level reduction for acceptance of responsibility, *see id.* § 3E1.1. He also would receive 2 criminal-history points for the 1991 conviction. The probation officer's calculations in the PSR mirrored those in the plea agreement. Zuniga never objected to the PSR, and the district court adopted it without change. The resulting guidelines range was 41 to 51 months. Zuniga argued that the 16-level increase vastly overstated the seriousness of his 1991 conviction and sought a below-guidelines sentence. The district court, with no elaboration, rejected that argument and concluded that the appropriate term was 41 months.

## II. DISCUSSION

On appeal Zuniga now contests the 16-level increase in his guidelines offense level. A threshold question is whether we may even consider this argument. The government contends that we may not reach the merits of Zuniga's argument because he has waived it. Zuniga counters that he has merely forfeited his appellate claim. We resolve this dispute at the outset because waiver would preclude further appellate review. *See United States v. Olano*, 507 U.S. 725, 733–34 (1993). A litigant waives an argument only through a knowing and intentional decision to forego that argument. *Id.*; *United States v. Garcia*, 580 F.3d 528, 541 (7th Cir. 2009). But if

the omission of an argument is accidental or neglectful, the argument is merely forfeited, subject to plain-error review. *United States v. Jaimes-Jaimes*, 406 F.3d 845, 847–48 (7th Cir. 2005). When, as here, the record contains no evidence of an explicit waiver, we will consider whether waiver may be nonetheless inferred because the party had an identifiable, strategic reason to have foregone a particular argument. *United States v. Butler*, 777 F.3d 382, 386–87 (7th Cir. 2015).

Applying these principles, we conclude that Zuniga's argument is merely forfeited, and not waived. The government offers two potential strategic explanations for Zuniga's failure to object to the 16-level increase, but neither withstands scrutiny. First, the government notes that two decisions of this court, *United States v. Martinez-Carrillo*, 250 F.3d 1101 (7th Cir. 2001), and *United States v. Ramirez*, 675 F.3d 634 (7th Cir. 2011), rejected similar challenges to application of the 16-level adjustment under § 2L1.2. The government's point, presumably, is that counsel's strategy was to avoid pressing a frivolous argument and instead to ask the district court for leniency. But an intervening decision from the Ninth Circuit, *United States v. Acosta-Chavez*, 727 F.3d 903, 908 (9th Cir. 2013), shows that an objection to the 16-level increase would not have been frivolous. *Acosta-Chavez* categorically rejected application of the 16-level increase for convictions under the very same Illinois statute. So whether or not a plea for leniency was a more promising argument than an objection to the 16-level increase, we see no strategic reason for failing even to preserve the issue for appellate review. The government's second argument about waiver fares no better. The government contends that Zuniga's trial counsel may have deliberately refrained from objecting to the 16-level increase to keep the district court from focusing

on the facts of Zuniga's past crime. The record refutes the premise of this argument: at sentencing, counsel *did* highlight the facts underlying Zuniga's 1991 conviction when arguing that it overstated his criminal history.

Far from an instance of waiver, this case is similar to *Butler*, where we concluded that the defendant had forfeited, rather than waived, a challenge to his guidelines calculation. In *Butler*, the defendant's trial lawyer had framed his disagreement with a 2-level increase in the guidelines calculation as an argument in mitigation under 18 U.S.C. § 3553(a). 777 F.3d at 386–87. We concluded that counsel's failure to frame his argument as a direct objection to the guidelines calculation was the result of an oversight. *Id.* at 388. The same is true here. Counsel argued to the district court that, in determining the sentence, the 16-level increase should be mitigated by the actual details of his past criminal history. Furthermore, as in *Butler*, and as we have already observed, we cannot conceive of any strategic reason for bypassing a direct objection to the 16-level increase, and instead arguing only in mitigation. We will therefore review Zuniga's argument for plain error.

Zuniga argues that the district court's application of the 16-level increase for his 1991 conviction was plainly erroneous because 720 ILCS 5/11–1.60(d), the Illinois statute for aggravated criminal sexual abuse, is categorically overbroad. A state offense is categorically overbroad if the crime is defined in such a way that it punishes more conduct than does the offense as commonly, or "generically," understood. The commentary to U.S.S.G. § 2L1.2 defines "crime of violence" to include a long list of offenses, including "sexual abuse of a minor," and "statutory rape." *See* U.S.S.G. § 2L1.2 cmt.

n.1(B)(iii). But according to Zuniga, neither of those enumerated offenses should apply here because the Illinois statute criminalizes a broader swath of conduct than the "generic" versions of those crimes.

Zuniga's focus on the generic versions of these two crimes is a byproduct of the so-called categorical approach to assessing the consequences of state convictions for federal sentencing. *See Descamps v. United States*, 133 S. Ct. 2276 (2013). Under the categorical approach, which every circuit has held applies when comparing state convictions to the offenses enumerated in the commentary to U.S.S.G. § 2L1.2, an enumerated predicate offense sweeps only as broadly as the "generic, contemporary" understanding of that crime. *See Taylor v. United States*, 490 U.S. 575, 598 (1990). To determine whether a previous state conviction qualifies as a "crime of violence," a federal court therefore asks whether the elements of the state offense of conviction align with the elements of the generic version of any enumerated predicate offense. A state crime may qualify as a predicate conviction only if the elements of the state crime mirror, or are narrower than, the elements of the generic crime. *Descamps*, 133 S. Ct. at 2283. If a state law sweeps more broadly than the generic crime, the categorical approach provides that a conviction under that law may not serve as a predicate offense. *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1686–87 (2013). There is another possibility: a state law may set forth a number of alternative sets of elements for a crime. In that situation only, the categorical approach is modified, and a court is permitted to consult a limited number of documents to determine which set of elements formed the basis of the defendant's previous conviction. *Descamps*, 133 S. Ct. at 2284–85. But under either method, the defendant's actual conduct is irrele-

vant. The inquiry is limited to whether the elements of the crime of conviction categorically fit within the "generic" federal definition of a corresponding predicate felony. *Moncrieffe*, 133 S. Ct. at 1684.

Under this rubric, Zuniga asserts that his 1991 conviction may not be used to increase his offense level by 16. He contends the "generic" versions of both sexual abuse of a minor and statutory rape place the age at which consent is valid at 16, while the Illinois statute places it at 17. Thus, he says, the Illinois crime cannot be a "crime of violence." (The government does not suggest that Zuniga's conviction qualifies as a crime of violence for any other reason.)

In considering this question, we do not write on a blank slate. In *United States v. Martinez-Carrillo* we concluded that the defendant had committed "sexual abuse of a minor," and thus qualified for the 16-level increase under U.S.S.G. § 2L1.2, in part because the victim of his earlier crime was younger than 18. 250 F.3d 1101, 1103–05 (7th Cir. 2001). We wrote that the "ordinary, contemporary, and common meaning" of the word "minor"—and thus the meaning relevant to a generic offense—is one who has not reached the age of 18. 250 F.3d at 1104 (citing BLACK'S LAW DICTIONARY (6th ed. 1990)). So under *Martinez-Carrillo*, Zuniga loses: section 5/11–1.60(d) defines the age of consent more narrowly than the generic versions of sexual abuse of a minor and statutory rape, and Zuniga's conviction is for a crime of violence.

Zuniga submits that *Martinez-Carrillo* is distinguishable, but we are not persuaded. He contends that *Martinez-Carrillo* was concerned only with whether § 5/11–1.60(d) was an "aggravated felony" rather than a crime of violence. Thus, he continues, *Martinez-Carrillo* can justify only increasing his

offense level by 8, not 16. *See* U.S.S.G. § 2L1.2(b)(1)(C). Addressing this contention requires some brief background: At the time *Martinez-Carrillo* was decided, U.S.S.G. § 2L1.2(b)(1)(A) required a 16-offense-level increase if the defendant previously had been convicted of an "aggravated felony" as that term was defined in the Immigration and Nationality Act. *See id.* cmt. n.1 (2000). The INA defines "aggravated felony" to include "sexual abuse of a minor." 8 U.S.C. § 1101(a)(43)(A). The Sentencing Commission amended the guideline, effective November 2001, to require a 16-level increase for a "crime of violence" and an 8-level increase for having previously committed an "aggravated felony." U.S.S.G. Amdt. 632, App. C, Vol. II, at 217–19. Zuniga essentially argues that these amendments effectively limited *Martinez-Carrillo*.

He is incorrect. We concluded in *Martinez-Carrillo* that the defendant had been convicted of sexual abuse of a minor specifically, not an aggravated felony generally. *See* 250 F.3d at 1104. And after the amendment, the new commentary defined "crime of violence" to include "forcible sexual offenses (including sexual assault of a minor)." A further amendment made "sexual assault of a minor" and "statutory rape" standalone enumerated crimes of violence. U.S.S.G. Amdt. 658, App. C, Vol. II, at 397–98. "And an enumerated offense always is a crime of violence for purposes of § 2L1.2(b)(1)(A)(ii)." *United States v. Ramirez*, 675 F.3d 634, 639 (7th Cir. 2011).

Relying on the same historical foundation, Zuniga next disparages the precedential weight of *Martinez-Carrillo.* He suggests that in that case we merely deferred to the definition of "sexual abuse of a minor" adopted by the Board of

Immigration Appeals (the agency responsible for administering the INA). But his premise is mistaken. We defer to an administering agency's interpretation of a statute only if the statute is ambiguous. *See City of Arlington v. F.C.C.*, 133 S. Ct. 1863, 1868 (2013); *Brumfield v. City of Chicago*, 735 F.3d 619, 626 (7th Cir. 2013). And at the time we decided *Martinez-Carrillo*, we did not find the relevant provision of the INA to be ambiguous. *See Lara-Ruiz v. INS*, 241 F.3d 934, 942 (7th Cir. 2001) ("We find that § 1101(a)(43)(A) is not ambiguous.").

Unable to distinguish *Martinez-Carrillo*, Zuniga lastly argues that we should reject it. He maintains that we were wrong to conclude that the "ordinary, contemporary, and common meaning" of the word "minor" is one younger than 18, as opposed to someone younger than 16. That contention has some force. Although in 2001 we held that the term "sexual abuse of a minor" was clear cut, we recently concluded that the phrase is susceptible to multiple interpretations. *See Velasco-Giron v. Holder*, 773 F.3d 774, 776 (7th Cir. 2014). And both the Fourth and Ninth Circuits have held that, as a categorical matter, a "minor" for the purpose of U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) is someone under the age of 16. *See Acosta-Chavez*, 727 F.3d at 908 (concluding that 720 ILCS 5/11–1.60(d) is categorically overbroad); *United States v. Rangel-Castaneda*, 709 F.3d 373, 378 (4th Cir. 2013) (concluding that Tennessee's statutory rape law is overbroad). What is more, thirty-three states, the District of Columbia, the federal government, and the Model Penal Code place the age of consent at 16. *See* 18 U.S.C. § 2243(a); *Velasco-Giron*, 773 F.3d at 782 (Posner, J., dissenting); *see also Taylor*, 495 U.S. at 598 ("We believe that Congress meant by 'burglary' the generic

sense in which the term is now used in the criminal codes of most States.").

But we are not alone in defining "minor," for these purposes, to include anyone under the age of 18. Our definition is in harmony with decisions of both the Fifth and Eighth Circuits. *See United States v. Rodriguez*, 711 F.3d 541, 560 (5th Cir. 2013) (en banc); *United States v. Medina-Valencia*, 538 F.3d 831, 834 (8th Cir. 2008). Moreover, the five most populous states in the union—California, Texas, New York, Florida, and Illinois—have, along with 12 others, set the age of consent at 17 or 18. *See Rodriguez*, 711 F.3d at 567 (Owen, J., concurring); *United States v. Viezcas-Soto*, 562 F.3d 903, 914 (8th Cir. 2009) (Gruender, J., dissenting) ("It seems to me that a definition of 'statutory rape' that excludes the statutory rape laws of seventeen states, including the most populous state in the Union, along with [Texas, New York, Florida, and Illinois], cannot reasonably be classified as 'generic.'").

At bottom, then, Zuniga's argument is a request that we move from one side of a circuit split to another. We have repeatedly incanted that we require "compelling reasons" to depart from our precedent. *See Santos v. United States*, 461 F.3d 886, 891 (7th Cir. 2006) (quoting *McClain v. Retail Food Employers Joint Pension Plan*, 413 F.3d 582, 586 (7th Cir. 2005)). And we often have refused to alter our position even when every other circuit to consider a particular question disagrees with our conclusion. *See Grandberry v. Keever*, 735 F.3d 616, 618–19 (7th Cir. 2013); *Santos*, 461 F.3d at 891–93.

The situation here is not remotely one-sided. Zuniga has demonstrated that the definition of "minor" is debatable. "However, simply showing that a point is debatable is not enough to meet the compelling-reasons standard for over-

turning circuit precedent." *Santos*, 461 F.3d at 893. And Zuniga does not present us with any other reason, compelling or otherwise, to disregard what we said in *Martinez-Carrillo*.

## III. CONCLUSION

For the foregoing reasons, Zuniga's sentence is AFFIRMED.